**Jon C. OWEN, Jr., Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 57A05–0302–CR–77.**

Court of Appeals of Indiana.

Sept. 30, 2003.

Jon C. Owen, Kendallville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy At-

torney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

We are asked today to settle an issue of first impression in Indiana: Is a sport utility vehicle (SUV) that has been registered as a truck a "truck" for purposes of Indiana's seatbelt statute?

◼ Appellant-defendant John C. Owen, Jr.,[1] appeals his conviction for Failure to Wear a Seatbelt While Operating a Passenger Motor Vehicle,[2] a class D infraction. Specifically, Owen claims that the statute under which he was convicted expressly exempts trucks and that his vehicle, a 1992 Chevrolet Blazer, is a truck. We hold that if an SUV is registered as a truck, then for purposes of Indiana's seatbelt statute, it is a truck, and we therefore reverse.

## FACTS

The facts reveal that on May 24, 2002, Officer Michael McCann of the Kendallville Police Department was conducting a seatbelt checkpoint in that city. Officer McCann noticed that Owen, while driving his Blazer, was not wearing his seatbelt. Officer McCann asked Owen for his operator's license and registration and explained why Owen had been stopped. Owen responded that he did not regularly wear a seatbelt because his Blazer had a truck license plate. Officer McCann acknowledged that the Blazer had a truck plate and was registered as a truck, but described the Blazer as an SUV in the ticket he issued to Owen.

After a bench trial commencing November 8, 2002, the trial court found that Owen's Blazer was not a truck. Appellant's App. p. 4. Furthermore, the trial court found Owen in violation of the seatbelt statute and ordered that Owen pay $83.50 in fines and court costs. Owen filed a motion to correct error, which was denied on January 15, 2003. Owen now appeals.

## DISCUSSION AND DECISION

Owen claims that the Bureau of Motor Vehicles (BMV) allows SUV owners to register their vehicles as either passenger cars or trucks. Owen registered his vehicle as a truck and received a truck license plate. Thus, Owen contends that the trial court erred in concluding that his Blazer is not a truck and that the seatbelt statute applied to his vehicle. The State agrees that the sole question on appeal is one of law. Appellant's Br. p. 6; Appellee's Br. p. 4. Specifically, we are asked to decide whether an SUV may be classified as a truck under Indiana Code section 9–13–2–123.

◼ We note that unless the statute indicates otherwise, we give the statute's language its plain, ordinary meaning. *Glotzbach v. State*, 783 N.E.2d 1221, 1227 (Ind.Ct.App.2003). Though "courts rather than administrative agencies must resolve questions of statutory construction," we note that "an agency's interpretation of a statute is entitled to great weight." *State v. Hensley*, 716 N.E.2d 71, 77 (Ind.Ct.App. 1999).

Our seatbelt statute requires that a driver and front-seat passenger in a "passenger motor vehicle" keep their seatbelts fastened. I.C. § 9–19–10–2. The term

---

1. We wish to make clear that the appellant in this case, Jon C. Owen, Jr., is represented by his father, attorney Jon C. Owen.

2. Ind.Code § 9–19–10–2.

"passenger motor vehicle" is defined as "a motor vehicle designed for carrying passengers." Ind.Code § 9–13–2–123. However, the statute goes on to state that "for purposes of IC 9–19–10, the term [passenger motor vehicle] includes buses, school buses, and private buses, and *excludes trucks,* tractors, and recreational vehicles." *Id.* (emphasis added). A "truck" is defined by statute as "a motor vehicle designed, used, or maintained primarily for the transportation of property." Ind.Code § 9–13–2–188. A panel of this court recently held that a key question in determining whether a vehicle was a truck was whether it was "designed for transportation of property." *State v. Price,* 724 N.E.2d 670, 676 (Ind.Ct.App.2000).

The State argues that SUVs, such as Owen's Blazer, "are vehicles designed for carrying passengers, rather than vehicles designed or used primarily for the transportation of property." Appellee's Br. p. 4. Specifically, the State points out that in a decision interpreting Georgia's seatbelt statute—which is nearly identical to Indiana's—the Georgia Court of Appeals held that SUVs were not trucks. *Crosby v. Cooper Tire & Rubber Co.,* 240 Ga.App. 857, 524 S.E.2d 313, 321–22 (1999), *rev'd on other grounds, Cooper Tire & Rubber Co. v. Crosby,* 273 Ga. 454, 543 S.E.2d 21 (2001). The Georgia Court of Appeals held as follows:

> While SUVs have a pickup truck chassis, the body is that of a passenger vehicle, fitting the definition of "passenger car" in terms of passenger capacity. "Truck" means every motor vehicle designed, used, or maintained primarily for the transportation of property. Thus, SUVs more closely fit the definition of a "passenger car" than a "truck" and replace most station wagons as dual purpose vehicles.

*Id.* Thus, the State asks us to declare that SUVs, by their very nature, are *not* trucks even though they may have truck license plates and may be registered as trucks.

Owen counters that his Blazer *was* designed primarily for the transportation of property, which is why he registered the Blazer as a truck and obtained a truck license plate. At trial, Owen introduced the warranty card that he received when he purchased his Blazer. The card's heading read, "1992 Chevrolet Light Duty *Truck* Warranty and Owner Assistance Information." Appellant's Ex. 4 (emphasis added). Furthermore, Owen testified that the back seat "can be folded flat so the entire back is flat," thereby making it easier to transport cargo. Tr. p. 22. Owen also stated that the spare tire is mounted on the outside of the Blazer to create additional "cargo space on the inside." Tr. p. 22. Owen—who works as a sports director for the YMCA—also testified on cross-examination that he uses his Blazer to transport sports equipment:

> That would have been all of September, all of October. Um, soccer and football's off-site, so for the entire eight weeks my car is being used as a, um, transportation back and forth for the soccer goals, balls, flag footballs, the pylons, end zones, all the markings and what-have-you.

Tr. p. 23.

Both parties concur that the Bureau of Motor Vehicles (BMV), which issues license plates in Indiana, allows SUV owners to register their vehicles as either trucks or passenger cars as long as certain statutory requirements are satisfied. Appellant's Br. p. 8; Appellee's Br. p. 9. Thus, the BMV—a State agency—seems to agree with the proposition that an SUV may be "a motor vehicle designed, used, or maintained primarily for the transportation of property." I.C. § 9–13–2–188. If

the BMV believed otherwise, it would not sanction the practice of registering SUVs as trucks.

We also note that the State benefits from giving SUV owners this choice, as the registration fee charged by the BMV for "all passenger cars" is $20.75, while the registration fee charged for "trucks" such as Owen's with "declared gross weight not to exceed 7,000 lbs." is $29.75. Indiana Bureau of Motor Vehicles, *Charges by Branch Pursuant to Acts of the Indiana General Assembly,* at http://www.in.gov/bmv/platesandtitles/feechart.pdf (last visited July 21, 2003). It would be incongruous to hold that the State—which allows SUV owners the choice of registering their vehicles as trucks and profits therefrom—may also punish an SUV owner for exercising that choice.

Finally, we note that the State contends that allowing SUV owners the choice of whether to register their vehicles as either trucks or passenger cars gives SUV owners the chance to "opt out" of Indiana's seatbelt law. Appellee's Br. p. 9. Be that as it may, such concerns are best left for our General Assembly to address, as the role of the courts is not to weigh the merits of public safety enforcement mechanisms and adopt certain safety schemes.

In sum, the definition of "truck" does not necessarily exclude SUVs, and if an SUV owner has paid the fee for a truck plate, then by law he drives a truck that is specifically excluded from the seatbelt law. If an SUV owner does not have a truck plate, then by law he does not drive a truck but instead drives a passenger vehicle that is subject to the seatbelt law.

Because Owen licensed his Chevrolet Blazer as a truck, we must conclude that the seatbelt statute does not apply here. As a result, his conviction cannot stand.

Reversed.

SHARPNACK, J., concurs.

BROOK, C.J., dissents with opinion.

BROOK, Chief Judge, dissenting.

I respectfully dissent.

Initially, I note that Indiana's various law enforcement agencies, not administrative agencies such as the BMV, are charged with enforcing Indiana Code Section 9–19–10–2 ("the seatbelt statute"). Accordingly, we owe no deference to the BMV. Indeed, "we conventionally construe penal statutes strictly against the State." *Mayes v. State,* 744 N.E.2d 390, 393 (Ind. 2001).

The State was required to prove by a preponderance of the evidence that Owen committed the charged infraction. *See* Ind.Code § 34–28–5–1(d) (defining burden of proof for infraction proceedings); Ind. Code § 9–19–10–8(a) (providing that person at least sixteen years of age who violates seatbelt statute commits a Class D infraction). The majority correctly observes that Indiana Code Section 9–13–2–123 exempts front seat occupants of "trucks" from the requirements of the seatbelt statute. Indiana Code Section 9–13–2–188(a) defines "truck" as "a motor vehicle designed, used, or maintained primarily for the transportation of property." The majority reiterates Owen's argument that his Blazer was designed primarily for transporting property but ultimately holds that "if an SUV owner has paid the fee for a truck plate, then by law he drives a truck that is specifically excluded from the seatbelt law." Op. at 778. In my view, the majority's holding is both conclusory and a departure from its own analysis.

Quite simply, a vehicle's license plate type is not dispositive of whether that vehicle is a "truck" for purposes of the seatbelt statute.[3] The determinative question is whether the vehicle is "designed, used, or maintained primarily for the transportation of property." Ind.Code § 9–13–2–188(a). A follow-up question then arises: designed, used, or maintained by whom? Unfortunately, the statute is silent on this point.

As we explained in *Fuller v. State*, 752 N.E.2d 235 (Ind.Ct.App.2001),

> A statute should be construed so as to ascertain and give effect to the intention of the legislature as expressed in the statute. In so doing, the objects and purposes of the statute in question must be considered as well as the effect and consequences of such interpretation. When interpreting the words of a single section of a statute, this court must construe them with due regard for all other sections of the act and with regard for the legislative intent to carry out the spirit and purpose of the act. We presume that the legislature intended its language to be applied in a logical manner consistent with the statute's underlying policy and goals. Statutes relating to the same general subject matter are in pari materia and should be construed together so as to produce a harmonious statutory scheme. Courts are not bound to adopt a construction that would lead to manifest absurdity in order that the strict letter of the statute may be adhered to. They will rather look to the intention of the legislature, as gathered from the import of the whole act, and will carry out such intention as thus obtained. Though penal laws are to receive a strict construction, they are not to be construed so strictly as to defeat the obvious or expressed intent of the legislature.

*Id.* at 237–38 (citations omitted).

The object and purpose of the seatbelt statute is to foster public safety by requiring front seat occupants of passenger motor vehicles to have their seatbelts "properly fastened about [their bodies] at all times when the vehicle is in forward motion." Ind.Code § 9–19–10–2. The State contends that

> the determination of whether sport utility vehicles fall within the definition of trucks for purposes of the seatbelt laws is an objective determination that must be applied across the board. It cannot be a subjective determination based on a given individual's personal use of his vehicle. Either SUVs are trucks for the purposes of this law or they are not. To hold otherwise would place police in the difficult and unworkable position of having to investigate a given individual's personal use of his vehicle in order to determine whether he could be given a ticket for failing to wear his seatbelt. The legislature certainly did not intend to give individuals the ability to "opt out" of the seatbelt law simply by claiming that they used their vehicles primarily to transport property or equipment of some sort. If so, then the driver of a station wagon, minivan, or even a regular sedan could make the same argument that he is exempt from the seatbelt law based on the same type of evidence relied upon by [Owen].

---

**3.** In fact, Owen's certificate of vehicle registration lists the Blazer's license plate type as "TK," or "Truck," and the vehicle type as "2W," or "2 Door Station Wagon." *See* Defendant's Exhibits 1 and 2 (certificates of vehicle registration expiring July 31, 2000, and July 31, 2003); Indiana Registration Record Help, Plate Information and Vehicle Information (explaining codes for license plate and vehicle types), *at* http://www.in.gov/bmv/premium/rr/help.html (last visited Sept. 15, 2003).

Appellee's Br. at 7–8 (footnote omitted). I agree with the State's contention, but only to a certain point.

I do not believe that we may hold, as the State urges, that *all* vehicles labeled as SUVs are not "trucks" for purposes of the seatbelt statute. A manufacturer may label a vehicle as both a truck and an SUV, whereas a government agency may label it a station wagon, and a consumer may label it something else entirely.[4] In short, labels are worthless in this regard, and courts must make an objective determination of whether a particular vehicle is designed, used, or maintained primarily for the transportation of property. In making this determination, courts should consider evidence of the manufacturer's intent with respect to the vehicle's design, use, and maintenance. Otherwise, as the State correctly observes, vehicle owners would be able to "opt out" of the seatbelt statute simply by designing, using, or maintaining their vehicles primarily for the transportation of property and thereby defeat the obvious intent of the legislature.

In the instant case, Owen points to the Blazer's four-wheel-drive capability, luggage carrier, front tow hooks, tow package, folding rear seats, and tailgate-mounted spare-tire carrier as evidence that it is designed primarily for the transportation of property. It is common knowledge that numerous sedans and station wagons boast many, if not most, of these features.[5] Although these features obviously facilitate the transportation of property, in my view they are insufficient to establish that the Blazer is designed *primarily* for the transportation of property.[6] Indeed, the Blazer's folding rear seats and other features indicate that Chevrolet's engineers designed it to transport either passengers or property (or both) at the owner's choosing.[7]

As for the Blazer's intended use and maintenance, I believe that its form is indicative of its function as a multipurpose transporter of both persons and property. In sum, I believe that the Blazer is not designed, used, or maintained primarily for the transportation of property and is therefore not a "truck" for purposes of the seatbelt statute. Consequently, I would affirm the trial court's finding that Owen violated the seatbelt statute.

---

**4.** On its website, Chevrolet classifies the current Blazer as an SUV, the Avalanche as both an SUV and a truck, and the 2003 SSR as both a truck and a car. 2004 Chevrolet.com, *at* http://www.chevrolet.com (last visited Sept. 15, 2003). These isolated examples of the latest trends in automotive marketing and design highlight the shortcomings of the seatbelt statute, as well as the folly of holding that all so-called SUVs are not "trucks" for purposes of the seatbelt statute.

**5.** Admittedly, most sedans and station wagons are not equipped with a tailgate-mounted spare-tire carrier, but then neither are semi-trailer or pickup "trucks."

**6.** Owen's dictionary defines "primarily" as "1) Fundamentally, 2) Originally." Appellant's Br. at 7 (citing MERRIAM-WEBSTER DICTIONARY 551 (3d ed.1974)). My dictionary defines the word somewhat differently: "1. At first; originally. 2. Chiefly; principally." THE AMERICAN HERITAGE DICTIONARY 983 (2nd college ed.1991).

**7.** Owen also points to the "truck warranty" mentioned in the Chevrolet warranty guide and owner's manual as evidence that the Blazer was designed primarily for the transportation of property. Defendant's Exhibits 4 and 5. I fail to see how this puffery relates to the Blazer's actual design.